IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JASON SCUTT, | CIV. NO. 20-00333 JMS-WRP |
| Plaintiff, | ORDER DISMISSING FIRST AMENDED COMPLAINT, ECF NO. 8 |
| vs. | |
| KELLI DORRIS; XIAYIN (GAOQUIANG) LIN; and CHARLENE CHEN, | |
| Defendants. | |

## ORDER DISMISSING FIRST AMENDED COMPLAINT, ECF NO. 8

## I. INTRODUCTION

On October 2, 2020, pro se Plaintiff Jason Scutt ("Plaintiff") filed a First Amended Complaint ("FAC")[1] against Defendants Kelli Dorris ("Dorris"), Xiayin (Gaoquiang) Lin ("Lin"), and Charlene Chen ("Chen") (collectively, "Defendants") alleging discrimination in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et seq.  ECF No. 8.  Based on the following, the court DISMISSES the FAC with leave to amend.

---

[1] On September 10, 2020, the court granted Plaintiff's Application to Proceed in forma pauperis, dismissed the original Complaint with leave to amend, and denied Plaintiff's Request for Appointment of Counsel.  ECF No. 7.

## II.  BACKGROUND

**A.     Complaint**

Plaintiff's original Complaint alleged an FHA claim against

Defendants based on Plaintiff's status as a "transgender/LGBTQIA+" and

"disabled" person.  ECF No. 1.  Plaintiff sought relief in the form of an injunction

preventing Defendants from evicting Plaintiff and damages of at least $100,000.

*Id*. at PageID ## 6-7.

On September 10, 2020, this court dismissed the Complaint for failure

to state a claim (the "September 10 Order").  ECF No. 7.  The September 10 Order

explained that Plaintiff failed to "allege facts beyond the mere accusation of

discrimination . . . [that] show[] a causal relationship between any specific

Defendant's conduct and Plaintiff's status as a transgender/LGBTQIA+ and/or

disabled person."  *Id.* at PageID # 74.  That is, the Complaint:

> fail[ed] to allege any facts whatsoever showing that Lin
> and Chen's conduct was because Plaintiff is
> transgender/LGBTQIA+ and/or disabled.  In short, the
> Complaint fail[ed] to allege facts showing what role each
> Defendant ha[d] in connection with Plaintiff's housing [ ]
> and what exactly each Defendant did to prevent Plaintiff
> from exiting her apartment and/or otherwise discriminate
> against her in the use or enjoyment of her apartment.

*Id.* at PageID # 75 (footnote omitted).  In addition, the September 10 Order

explained that "[i]f Dorris is not, in fact, Plaintiff's landlord, Dorris may not be

2

liable under the FHA. *Id.* n.4 (citing *Hoostein v. Mental Health Ass'n (MHA), Inc.*, 98 F. Supp. 3d 293, 297-98 (D. Mass. 2015) (holding that "Plaintiffs lack a cause of action under [§§ 3604 & 3617] of the FHA against . . . tenants . . . and any other individuals or entities who do not actually own [the relevant property]").

Because Plaintiff had subsequently moved out of the apartment, the court explained that her claim for injunctive relief was moot. *Id.* at PageID ## 75-76. Plaintiff was granted leave to amend to allege, if possible, "factual allegations sufficient to state a plausible FHA discrimination claim for damages." *Id.* at PageID # 76. The court instructed Plaintiff that if she chose to amend, she must, in part, "explain, in clear and concise allegations, what each defendant did (or failed to do) and how those specific facts create a plausible claim for relief in reference to a specific cause of action." *Id.* The court further explained that an amended complaint "may not incorporate any part of the original Complaint." *Id.* at PageID # 77.

**B.    FAC[2]**

Plaintiff then filed a four-page amended complaint to which she attached a 42-page Exhibit A, comprised of various documents that both support

---

[2] For purposes of screening, facts alleged in the FAC are accepted as true and construed in the light most favorable to Plaintiff. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

and supplement the amended complaint.  ECF Nos. 8, 8-1.  For screening

purposes, the court construes these documents together as the FAC.  The FAC is

rather confusing and includes many irrelevant allegations.  Nevertheless, as best

the court discerns, the FAC alleges that Lin and Chen were Plaintiff's landlords

and Dorris was another tenant in the building where Plaintiff lived.  *See* ECF No. 8

at PageID # 83 (alleging that "[l]andlords employed Dorris" to post Notice to

Vacate on Plaintiff's door); Ex. A, ECF No. 8-1 at PageID # 98 (notice identifying

Lin and Chen as "Landlords"), *id.* at PageID # 99 (note signed by Dorris at

"landlord's request"); *id.* at PageID # 102 (email describing Dorris as Plaintiff's

"abusive neighbor downstairs"); *but see id.* at PageID ## 103, 110 (emails

referring to Dorris as Plaintiff's landlord); *id.* at PageID # 118 (email stating that

Dorris "may or may not be the landlord").

On or around July 1, 2020, Plaintiff applied in state court for a

temporary restraining order ("TRO") against Dorris, claiming in part that Dorris

would not "allow[] [Plaintiff] to leave the common area exit," and had "behaved

violently," causing Plaintiff to be afraid.  *Id.* at PageID # 129.  The FAC alleges

that Dorris then "used the [TRO] to block the exit with her body and vehicle

thereby requiring Plaintiff to walk within 10 feet of her just to leave the building."

ECF No. 8 at PageID # 83.  As Plaintiff explained in emails dated July 23, 2020,

Plaintiff "can exit physically, but it would be in violation of the terms of [the]

restraining order;" that is, Plaintiff "[c]an't physically leave via the only legal exit to [her] apartment, without 'approaching [Dorris]' or otherwise violating the court restraining order, and [Dorris] has made it clear that [Plaintiff does] NOT have her permission at any time to use the common exit, nor to enter thereafter." ECF No. 8-1 at PageID ## 112, 115. By note also dated July 23, 2020, at "landlord's request," Dorris granted Plaintiff permission to "exit the unit, includ[ing] the common area, Garage and drive way . . . from 07/24/2020-09/06/2020." *Id.* at PageID # 99. Dorris' note permits Plaintiff only to exit the building and states that if Plaintiff uses the exit for others, Dorris' permission will end and she will "exercise [her] legal rights." *Id.*

The FAC alleges that around this time, Dorris "began to [make] . . . anti-Semitic statements." ECF No. 8 at PageID # 83. In an email dated July 19, 2020, Plaintiff states that Dorris "uses the word 'kike'[3] frequently in conversation." ECF No. 8-1 at PageID # 103. And although Plaintiff does not specify whether she is Jewish, the FAC also alleges that in December 2019, Plaintiff received noise complaints while "listening to Hannukah music." ECF No. 8 at PageID # 84.

---

[3] Kike is "used as an insulting and contemptuous term for a Jewish person." Merriam-Webster online dictionary, https://www.merriam-webster.com/dictionary/kike (last visited December 14, 2020).

The FAC alleges that "acting as agent and on behalf of the building's owner," Dorris enforced "cleanliness in the common area," "noise complaints," and served and signed for mail belonging to the owner and tenants. *Id.* at PageID # 83.

The FAC alleges that "Plaintiff's trans/LGBT status would have been known . . . by her dress, appearance and shared laundry facilities where clothing belonging to the building's tenants is commonly in view of the other tenants." *Id.* at PageID # 84. Plaintiff "witnessed Dorris and other[s] . . . walk by and observe [Plaintiff] doing laundry in the common area" where they "must have reasonably seen or been aware of clothing and underwear contrary to typical 'Male' gender expectations." *Id.*

The FAC further alleges that "Landlords employed [Dorris] to" post a Notice to Vacate on Plaintiff's front door. *Id.* at PageID # 83. The Notice to Vacate from Lin and Chen, dated July 24, 2020, gave Plaintiff "45 days," or until "September 6th, 2020," to move out, stated that Plaintiff's failure to do so would "force [Lin and Chen] to exercise [their] legal rights," and waived fines or penalties if Plaintiff chose to move out sooner. ECF No. 8-1 at PageID # 98. That same day, Chen sent a copy of the Notice and Dorris' note (regarding permission to exit the unit) to Plaintiff via email. *Id.* at PageID # 124. In her email message, Chen stated that she would also send copies of these documents to Plaintiff via text

6

and by delivery. *Id.* After receiving the Notice to Vacate, Plaintiff allegedly experienced unspecified "intensified Civil harassment," resulting in "an actual deadline to leave of more like three days." ECF No. 8 at PageID # 84.

The FAC alleges that Defendants' "harassment and eviction" of Plaintiff "were a direct result of [Defendants'] beliefs or opinions of both non-Christian and/or trans/LGBT" people. *Id.* at PageID # 85 (internal quotation marks omitted). That is, Plaintiff claims that in violation of the FHA, Defendants took "unreasonable actions . . . to remove a tenant based on objections to her LGBT status and . . . religious beliefs." *Id.* Plaintiff seeks damages of $300,000 "to relocate and for emotional pain and physical stress caused as a direct result of the discrimination." *Id.* at PageID # 86.

### III.  STANDARDS OF REVIEW

The court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and order the dismissal of any complaint that is "frivolous or malicious; . . . fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to dismiss sua sponte an in forma pauperis complaint that fails to state a

7

claim); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding

that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

To state a claim, a pleading must contain a "short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In considering whether a complaint fails to state a claim, the court must set

conclusory factual allegations aside, accept non-conclusory factual allegations as

true, and determine whether these allegations state a plausible claim for relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d

1061, 1065 (9th Cir. 2008). A complaint that lacks a cognizable legal theory or

alleges insufficient facts under a cognizable legal theory fails to state a claim. *See*

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th

Cir. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

1990)).

A district court may dismiss a complaint for failure to comply with

Rule 8 where it fails to provide the defendant fair notice of the wrongs allegedly

committed. *See McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996)

(affirming dismissal of complaint where "one cannot determine from the complaint

who is being sued, for what relief, and on what theory, with enough detail to guide

discovery"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me

accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citations and internal quotation signals omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citations, internal quotation signals, and alterations omitted).

Plaintiff is appearing pro se; consequently, the court liberally construes the Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (citations and internal quotation signals omitted); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).

## IV. <u>DISCUSSION</u>

### A.    FHA Legal Standard

The FHA, in part, makes it unlawful for property owners and landlords to: (1) refuse to rent or otherwise deny "a dwelling to any person because

9

of . . . religion [or] sex," 42 U.S.C. § 3604(a); (2) "discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . religion [or] sex," *id.* § 3604(b); and (3) "coerce, intimidate, threaten, or interfere with [a tenant's] exercise or enjoyment of . . . any right granted or protected by [§ 3604]," *id.* § 3617.  Regulations interpreting the FHA, promulgated by the Secretary of Housing and Urban Development ("HUD"),[4] provide that "evicting tenants" and "[s]ubjecting a [tenant] to harassment . . . that causes the person to vacate a dwelling" "because of [the tenant's] . . . religion [or] sex" are prohibited actions under § 3604(a).  24 C.F.R. § 100.60(b).  HUD regulations further provide that actions prohibited by § 3604(b) include, but are not limited to, "[l]imiting the use of privileges, services or facilities associated with a dwelling" and "[s]ubjecting a [tenant] to harassment . . .  that has the effect of . . . denying or limiting services or facilities in connection with the . . . rental of a dwelling" "because of . . . religion [or] sex."  *Id.* at § 100.65(b).

///

///

---

[4] Courts review HUD regulations interpreting the FHA with deference.  *See Meyer v. Holley*, 537 U.S. 280, 287-88 (2003); *Harris v. Itzhaki*, 183 F.3d 1043, 1051-52 (9th Cir. 1999) (citing *Chevron USA, Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)).

**B.     Application of Legal Standard**

The FAC fails to allege sufficient facts to state a claim for violation of the FHA.  Plaintiff again alleges only conclusory allegations—without facts—regarding her subjective belief that Lin and Chen evicted Plaintiff because of Plaintiff's religion and/or status as a "transgender/LGBT" person.  In addition, the FAC fails to allege facts showing that Lin and Chen are vicariously liable for Dorris' conduct and/or that Dorris is herself subject to liablity under the FHA.  The court addresses these points in turn.

**1.     *Lin and Chen***

*a.     Discriminatory intent*

Courts apply the Title VII discrimination analysis to evaluate FHA discrimination claims.  *See Budnick v. Town of Carefree*, 518 F.3d 1109, 1113-14 (9th Cir. 2008).  Thus, FHA claims can be established "under a theory of disparate treatment or disparate impact."[5]  *Id.* at 1114 (citations omitted).  To state a claim for disparate treatment in violation of the FHA, Plaintiff must allege that (1) her rights are protected under the FHA; and (2) she suffered a distinct and palpable injury as a result of the defendant's discriminatory conduct.  *See Harris*, 183 F.3d at 1051.  Discriminatory intent or motive is a necessary element of an FHA

---

[5] The FAC does not allege disparate impact.

disparate treatment claim.  *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).  Thus, Plaintiff must allege facts plausibly demonstrating that she was subjected to explicit differential or discriminatory treatment *because of* her religion and/or transgender/LGBT status.[6]  *See Manning v. Westland Vill. Square Apartments*, 2019 WL 3254787, at *2 (D. Nev. July 19, 2019); *Owen v. City of Hemet*, 2020 WL 5093086, at *9 (C.D. Cal. June 22, 2020); *cf. Hunt v. AIMCO Props. L.P.*, 814 F.3d 1213, 1222 (11th Cir. 2016) ("[A] complaint [alleging FHA discrimination based on disability] must allege that the adverse action was taken *because of* a disability and state the facts on which the plaintiff relies to support that claim.").

Here, the FAC alleges that Lin and Chen issued the Notice to Vacate, directed Dorris to attach a copy of the Notice to Plaintiff's door, and directed Dorris to provide written permission for Plaintiff to exit through and use the building's common areas.  It further alleges that Chen sent Plaintiff copies of both the Notice and Dorris' note by email and text.  But the FAC alleges no facts

---

[6] For purposes of this screening order, the court assumes, without deciding, that the FHA's prohibition against discrimination based on "sex" includes discrimination against a person for being transgender and/or LGBT.  *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741 (2020) ("[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.").

suggesting that Lin and Chen issued the Notice to Vacate or engaged in any other action "*because of*" Plaintiff's religion or transgender/LGBT status.

      The FAC does not allege that Lin or Chen knew that Plaintiff is transgender/LGBT or of Plaintiff's religion.  But even if Lin and Chen knew these details about Plaintiff, the FAC fails to allege any facts showing that such facts were related in any way to their decision to issue the Notice to Vacate.  At most, the FAC alleges that Lin's and Chen's "beliefs or opinions of both non-Christian and/or trans/LGBT" individuals were expressed "via the disparaging statements made [by] . . . Mrs. Lin, [Dorris], etc." and by posting ads "to fill the vacant unit for rent; apparently in efforts to find a more ideal tenant with more aligned beliefs [or] values[.]"  ECF No. 8 at PageID # 85 (internal quotation marks omitted).  But the FAC does not allege what Lin said that was disparaging or when she made such statement(s).  Nor does the FAC allege any facts suggesting that Lin or Chen desire a tenant with particular beliefs or values.

      In short, the FAC fails to allege any facts plausibly suggesting purposeful discrimination by Lin and/or Chen *on account of* Plaintiff's religion

///

///

///

///

13

and/or transgender/LGBT status.  Thus, the FAC fails to state an FHA claim

against Lin and Chen based on their conduct.[7]

          *b.*    *Agency*

        The FAC alleges that Dorris acted as Lin and Chen's agent by

"carr[ying] out . . . various tasks . . . for Owner."  ECF No. 8 at PageID # 83.

Property owners may be held liable for the unlawful conduct of the owners' agents

or employees in the scope of their authority or employment.  *See* 24 C.F.R.

§ 100.7;[8] *Meyer*, 537 U.S. at 285-86 (recognizing that the FHA provides for

vicarious liability); *Bischoff v. Brittain*, 183 F. Supp. 3d 1080, 1092 (E.D. Cal.

---

[7] The Ninth Circuit has not yet addressed whether a claim for hostile housing environment against a landlord or property owner based on discriminatory conduct of one tenant against another tenant is actionable under 42 U.S.C. § 3617.  Other courts have recognized such a claim where a plaintiff plausibly alleges harassment that was sufficiently severe and pervasive as to interfere with or deprive the plaintiff of the use or enjoyment of her home and where the landlord or property owner knew or should have known of the harassment but failed to take appropriate action.  *See Hicks v. Makaha Valley Plantation Homeowners Ass'n*, 2015 WL 4041531, at *11 (D. Haw. June 30, 2015) (collecting cases).

    But even assuming such a claim is actionable under the FHA, the FAC fails to allege that Plaintiff complained to Lin or Chen about harassment by Dorris or any other tenant, or that Lin and Chen failed to take appropriate action.  To the contrary, the FAC alleges that after Plaintiff applied for a TRO, the "[s]tate court recommended to notify landlords about harassment by Dorris," ECF No. 8 at PageID # 83, and that shortly thereafter, Dorris wrote a note at "landlord's request" granting Plaintiff permission to exit through the common area and use the garage and drive way," ECF No. 8-1 at PageID # 99.

[8] Section 100.7(b) provides that "[a] person is vicariously liable for a discriminatory housing practice by the person's agent or employee, regardless of whether the person knew or should have known of the conduct that resulted in a discriminatory housing practice, consistent with agency law."

2016) ("Where a property manager violates [the FHA], the property owner is vicariously liable for those violations.") (citing *Meyer*, 537 U.S. at 285).

Whether an agency relationship exists for purposes of the FHA is determined under federal law, which looks to traditional agency principles and HUD regulations. *See, e.g.*, *Holley v. Crank*, 400 F.3d 667, 673 (9th Cir. 2005); *Harris*, 183 F.3d at 1054.  The question of agency is for the jury to determine. *Harris*, 183 F.3d at 1054 (citation omitted).  Thus, at this screening stage, the court determines only whether the FAC alleges facts from which a jury could find the existence of an agency relationship.  *See Dantzler v. Harrison*, 2018 WL 3198453, at *4 (C.D. Cal. June 25, 2018) (citations omitted).

The essential characteristics of an agency relationship include: (1) "[a]n agent . . . holds a power to alter the legal relations between the principal and third persons;" (2) "[a]n agent is a fiduciary with respect to matters within the scope of [her] agency;" and (3) "[a] principal has the right to control the conduct of the agent with respect to matters entrusted to [her]."  Restatement (Second) of Agency §§ 12, 13, 14 (Oct. 2020 Update).  And HUD regulations define an agent for purposes of the FHA as "any person authorized to perform an action on behalf of another person regarding any matter related to the . . . rental of dwellings, including offers, solicitations or contracts and the administration of matters regarding such offers, solicitations or contract of any residential real estate-related

15

transactions."  24 C.F.R. § 100.20.  Factual allegations have been found sufficient to support an agency relationship where it was alleged, for example, that a tenant "collect[ed] rent checks and show[ed] vacant units to prospective tenants," *Harris*, 183 F.3d at 1054; and where a tenant was granted authority by the owner to change the locks, thereby altering a co-tenant's entry rights, *see Dantzler*, 2018 WL 3198453, at *4.

Here, the FAC alleges that "Landlord employed[9] [Dorris] to attach [the Notice to Vacate] to Plaintiff's front door."  ECF No. 8 at PageID # 83.  The FAC further alleges that Dorris enforced "cleanliness in the common area," served and signed for mail addressed to the owner and other tenants, and made complaints to other tenants regarding noise and the cleanliness of their window screens.  *Id.* But the FAC alleges "no facts as to the relationship" between Lin or Chen and Dorris "other than the fact that [Dorris] is also a tenant on the premises."  *White v. Peek*, 2019 WL 265145, at *3 (S.D. Cal. Jan. 18, 2019) (dismissing complaint in part for failure to allege facts showing agency relationship and actions owner took to ratify tenant's discriminatory conduct).  Nor does the FAC allege facts showing that Dorris had the "power to alter the legal relationship" between Plaintiff and Lin

---

[9] Without more, even viewed in a light most favorable to Plaintiff, the FAC does not suggest that Dorris was a paid employee of Lin and Chen.  Rather, this allegation suggests that Chen delivered the Notice to Plaintiff through Dorris, who posted it on Plaintiff's front door.

or Chen—Plaintiff does not allege that Dorris had authority to impose consequences for any alleged cleanliness or noise violations, had decision-making power with respect to Plaintiff's right to live in the building, participated in the fiscal management of the building, or performed any action related to any real estate-related transactions on behalf of Lin and Chen.  *See* Restatement (Second) of Agency §§ 12, 13, 14.  In short, the FAC fails to allege facts to support a plausible finding that Dorris acted as agent for Lin and Chen.  Thus, the FAC fails to state an FHA claim against Lin and Chen based on a theory of vicarious liability.

### 2.    *Dorris*

Further, the FAC fails to allege facts showing that Dorris qualifies as an individual subject to liability under the FHA.  Generally, tenants who do not own the subject property are not liable under the FHA.  *See, e.g.*, *Hoostein v. Mental Health Ass'n (MHA), Inc.*, 98 F. Supp. 3d 293, 298 (D. Mass. 2015) (holding that "Plaintiffs lack a cause of action under [§§ 3604 & 3617] of the FHA against . . . tenants . . . who do not actually own [the relevant property]").  The FAC concedes that Dorris was a co-tenant and does not own the apartment building.  *See* ECF No. 8 at PageID # 83 (alleging that Dorris acted "on behalf of the building's owner"); ECF No. 8-1 at PageID # 102 (describing Dorris as Plaintiff's "neighbor downstairs").

17

And although agents or employees of a property owner may be liable for their own unlawful conduct under the FHA, *see Meyer*, 537 U.S. at 285; *Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562 (5th Cir. 1979); *Hintz v. Chase*, 2017 WL 3421979, at *3 (N.D. Cal. Aug 9, 2017); *cf. Kooman for Est. of Romig v. Boulder Bluff Condominiums, Units 73-123, 125-146, Inc.*, 2020 WL 616352, at *8 (W.D. Mich. Feb. 10, 2020) (recognizing that agents who engage in purely ministerial functions or act merely as conduits between owner and individual alleging discrimination against owner are not liable under the FHA), as discussed above, the FAC fails to allege sufficient facts showing that Dorris was an agent of Lin and Chen under federal law.

Thus, for the same reasons that the FAC fails to state a claim for vicarious liability, Plaintiff fails to state an FHA claim against Dorris as an agent.

## C.    Leave to Amend

Nevertheless, the court cannot say it would be impossible for Plaintiff to allege facts to support her claims; thus, the court will give Plaintiff a final opportunity to state a claim.  *See, e.g.*, *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ("Leave to amend should be granted if it appears at all possible that the [pro se] plaintiff can correct the defect.") (citations and internal quotation marks omitted).  Plaintiff is GRANTED leave to amend by January 8, 2021 to allege, if

possible, a plausible FHA discrimination claim for damages.  If Plaintiff chooses to file an amended complaint, she must (1) allege the basis of this court's jurisdiction, (2) state each claim she is making—that is, which FHA provision(s) she alleges a defendant violated, (3) name the defendant against whom she asserts a claim, (4) allege exactly what that defendant did or did not do, (5) allege what specific injury she suffered because of that defendant's conduct, and (6) state what specific relief she seeks.  Plaintiff must repeat this process for each person or entity that she names as a defendant.  In other words, Plaintiff should explain, in clear and concise allegations, what each defendant did (or failed to do) and how those specific facts create a plausible claim for relief in reference to a specific cause of action.  In addition, Plaintiff must comply with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Hawaii.

An amended complaint generally supersedes a prior complaint and must be complete in itself without reference to the prior pleading.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).  Claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal,

but claims that are voluntarily dismissed are considered waived if they are not repled).

The amended complaint must state that it is the "Second Amended Complaint," and it may not incorporate any part of the original Complaint by reference, but rather, any specific allegations must be retyped or rewritten in their entirety.  Plaintiff may include only one claim per count.  Any cause of action that is not raised in the Second Amended Complaint is waived.  *See id.*  Failure to file an amended complaint by January 8, 2021 will result in automatic dismissal of this action.

## V.  <u>CONCLUSION</u>

Based on the foregoing, the FAC is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim.  Plaintiff is GRANTED leave to file an amended complaint to attempt to cure the deficiencies of her FHA damages claims identified above, on or before January 8, 2021.  Plaintiff may not amend to add new Defendants or new claims.  Failure to file a Second Amended Complaint

///

///

///

///

by January 8, 2021 will result in automatic dismissal of this action for failure to

prosecute and failure to comply with a court order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 14, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Scutt v. Dorris, et al.*, Civ. No. 20-00333 JMS-WRP, Order Dismissing First Amended
Complaint, ECF No. 8