FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
02 January 2021 11:02 AM lrs
Michelle Rynne, Clerk of Court

1  Jason Scutt
2  Pro Se
3  281 Kaikea St.
4  Kihei, HI, 96753
5  808-250-0472
6  Jason.r.scutt@gmail.com
7
8

| UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAI'I | |
|---|---|
| JASON SCUTT, an individual, on behalf of herself<br><br>Plaintiff<br><br>vs.<br><br>KELLI DORRIS; XIAYIN (GAOQUIANG) LIN; and CHARLENE CHEN<br><br>Defendant. | CASE NO.: CV 20-00333 JMS -WRP<br><br>PLAINTIFF'S SECOND AMMENDED COMPLAINT<br><br>Trial Date: none set |

9

10          **I. Introduction:**

11   1. This is a lawsuit seeking monetary relief as well as damages against Defendants

12   who are both landlords and agents of the rental housing unit in Wailuku, Hawaii

13   where Plaintiff resided peacefully for approximately two years before being evicted.

14   Landlords directly and via agents engaged in discriminatory and threatening

15   behavior based exclusively on Plaintiff's status as Transgender/LGBTQ IA+ as well

16   as her adherence to Jewish religious beliefs.

1

1

2

## II. Jurisdiction:

Federal question - Fair Housing Act (FHA) (42 U.S. Code § § 3601-3619 and 3631)

4

## III. Facts Giving Rise to This Action:

1. From approximately January 1, 2020 until the TRO hearing, Dorris had been employed by landlords Lin and Chen , who cite an unknown "Association" in their eviction text – see exhibit A, to conduct maintenance, enforce cleaning, illegally sign for and collect certified mail addressed to Plaintiff and other tenants, and to serve evictions and other communications from Lin and Chen by illegally attaching items to Plaintiff's front door or leaving in her entryway.

2. Plaintiff began to receive text messages from Chen after Dorris began making frivolous complaints to Plaintiff and Landlords about "Cleanliness" and "Noise" shortly after discovering Plaintiff washing female clothing in the common area washroom and otherwise exhibiting features that are not normally associated with the male stereotype. No complaints were ever received in the years Plaintiff had been a tenant before the arrival of Dorris in or about December of 2019. Doris also gave a false name (Beatriz) during a verbal confrontation regarding maintenance of the unit.  Doris and Chen both appeared visibly upset after the female clothing was

discovered and escalated the harassment by sending Plaintiff intimidating and unusual and confusing text messages instead of serving written notice regarding any alleged violations. Landlords also employed Dorris to transmit messages about cleaning window screens and common area, however no complaints from other tenants or neighbors were filed before the arrival of Dorris.

3. On or about July 1, 2020 Plaintiff applied for a temporary restraining order (TRO) against K. Dorris (another tenant acting as agent on behalf of Landlords Chen and Lin and their respective home-owners owners association (HOA). After the TRO was granted, Dorris continued to engage in harassment designed to compel Plaintiff to leave on her own accord. Prior to requesting the TRO, Dorris, acting on behalf of the landlords and HOA, approached Plaintiff without face coverings on multiple occasions during the pandemic Covid19 to complain about maintenance issues with the property and other issues normally discussed with a property owner or manager.

4. After the ongoing intimidation and harassment throughout most of 2020, primarily conducted by Lin and Chen via agent Dorris and other unknown maintenance workers[1], Plaintiff began searching for alternative housing and was forced to reach

---

[1] Around the time Dorris appeared, a different unknown maintenance worker stated verbally that he would "...do anything for Mrs. Lin", which was construed as an obvious threat or intimidation on behalf of the opposing parties.

1   out to domestic violence agencies such as the National Deaf Domestic Violence

2   Hotline based on her hearing impairment. Plaintiff is not Deaf but suffers hearing

3   loss, primarily in her right ear.  Plaintiff then applied for a TRO based on these

4   conversations; and was subsequently called a "Kike" by Dorris after the request was

5   granted. Doris also could be heard through the door in December 2019 saying

6   "Mazel Tov" in December 2019 after Plaintiff had been listening to Hanukkah music

7   (Plaintiff is not ethnically Jewish, however considers herself Jewish as her primary

8   religion, and refrains from participating in Christian beliefs). Plaintiff also overheard

9   Dorris using the word in conversation with other maintenance workers and/or

10  neighbors across the street around January 2020 after the female clothing and

11  religious practices were discovered and again after the TRO was granted.

12

13  5. In July 2020 after the TRO was granted but before the hearing, Plaintiff began to

14  receive more frequent intimidating text messages from Chen requesting more

15  information about the restraining order and indicating that she "didn't want any more

16  problems". Chen also made great efforts to involve herself in the situation by

17  discussing the private matter, send texts and emails discussing the matter to which

18  she was not a party, and otherwise acting as intermediary between Dorris and

19  Plaintiff regarding "permission" to freely exit the unit.

20

4

1   On or around July 7, Doris began positioning herself between the only legal exit and

2   her vehicle thereby preventing Plaintiff to legally exit her unit for several days in

3   order to try to force Plaintiff to walk within 10 feet of her thereby violating the terms

4   Plaintiff's own TRO. Doris had also prevented Plaintiff from leaving her unit via the

5   common area *before* the requested TRO by approaching without face coverings to

6   complain about maintenance. Ironically, Doris had also been employed to enforce

7   an unwarranted "quarantine" implemented by landlords despite her own refusal to

8   wear a mask during verbal confrontations with Plaintiff, thereby promoting Plaintiff

9   to finally reach out to domestic violence counselors, including her therapist at the

10  time and to ultimately apply for the TRO.

11

12  6. On or about July 7, 2020, Plaintiff first notified Chen and Lin via text message

13  that Dorris was creating a health and safety hazard by blocking the common area

14  and thus the exit to Plaintiff's dwelling. Plaintiff specified that she used the refusal

15  to wear a mask as an intimidation factor before and after the TRO; and also used the

16  terms of the TRO itself to block the exitway. Despite receiving a copy of the court

17  order, Lin and Chen aggressively involved themselves in the matter by conveying

18  "permission" letters and other complaints instead of simply asking Dorris to wear a

19  mask and stop blocking the exits. Landlords took no action to correct the hazard and

20  instead aided Dorris in conveying "permission" letters indicating that Plaintiff has

1  "Permission" from Dorris and landlords to exit the unit, however threaten also to

2  "exercise legal rights" if Plaintiff uses the exit/entryway for any other purpose than

3  to "..use the others".

4

5  7. On July 24, 2020, Chen and Lin employed Dorris once again to illegally attach a

6  "notice to vacate" on her front door that reiterates the threatening statements about

7  "exercising legal rights" which are defined as "cancelling permission" to exit.  Chen

8  also appears to be the author of the separate "permission" letter which further defines

9  the vague statement about "exercise legal rights" as a clear threat to commit an

10  unlawful act by revoking permission to exit the unit freely. The eviction letter also

11  makes demands for money for unpaid rent despite the pandemic moratorium that

12  was in effect by the governor of Hawaii prohibiting landlords from engaging in this

13  exact thing.

14

15  8. After service of the eviction, Doris and other unknown persons continued to

16  intensify the harassment by uttering slurs "mazel tov" and ignoring requests to leave

17  at least 10 feet between the exit and Plaintiff's apartment, thereby again forcing

18  unwanted contact without face coverings. Plaintiff subsequently filed complaints

19  with HUD and made efforts to retain an attorney on a fee-contingent basis but was

20  unsuccessful. See Exhibit A for text messages and written correspondence

1          **III. First Cause of Action – Dorris:**

2          9. Under the FHA (42 U.S. Code §3404), it is unlawful for property owners

3    to (1) refuse to rent or deny a dwelling to any person because of …religion [or] sex,

4    42 U.S. Code §3604(a);  (2) to discriminate … because of religion or sex, 42 U.S.

5    Code §3604(b); and (3) "coerce, intimidate, threaten, or interfere with a tenant's

6    exercise or enjoyment of… any right protected under §3604 - 42 U.S. Code §3617.

7     HUD regulations also make it unlawful to evict or "subject a tenant to harassment…

8    that causes the person to vacate… because of sex or religion" or to "deny or li it

9    services or facilities" in connection with rental because of sex or religion. – 24

10   C.F.R. §100.60(b) and §100.65(b).

11

12   10. Landlord Chen never explicitly made her objection or beliefs known directly,

13   however ignored multiple written complaints about the discriminatory conduct and

14   hostile housing environment carried out by Dorris – specifically regarding the

15   inability to freely exit the unit and the failure to comply with face covering mandates

16   in the common area. As such Plaintiff was effectively deprived of both her use of

17   the common area exit (including washer and dryer) as well and enjoyment of her

18   home; of which she was not permitted to exit without written "permission".  Also,

19   Chen had conveyed messages in June 2020 about "coffee spills" on Dorris' car and

20   other frivolous and hostile "complaints" made by Dorris that had no factual basis.

After being notified of the situation, Chen simply states in a text: "when do you move out?" but takes no action to enforce mask e=wearing or remove the hazard from the exit – see Exhibit A.

11. As such, Chen is vicariously liable for the ongoing subtle harassment and hostile environment by refusing to enforce mask-wearing and serving an illegal "eviction" after being made aware of the TRO and the use of the terms thereof to block the legal exit. As such the Court should consider Chen liable under 24 C.F.R. § 100.7 based on case law such as *Hicks v. Makala Valley Plantation Homeowners Association,* 2015 WL 4041531, *Bischoff v. Brittain,* 183 F. Supp. 3d 1080, 1092 (E.D. Cal. 2016).

### IV. Second Cause of Action - Lin

12. Under Hud regulations, Lin as the property owner is also vicariously liable for both the hostile living environment and the Title VII discrimination as it applies to the FHA. Chen, who is a co-landlord, acted as agent on behalf of Lin, who appears to be the property owner. Lin was clearly made aware of Plaintiff's protected status (see *Bostock v. Clayton City.,* 140 S. Ct. 1731, 1741 (2020) based on sex and religion per the necessity to use the common area washroom in full view of tenants, landlords and neighbors.

**V. Dorris and Agency**

13. Under FHA traditional agency principles will be found to apply in that (1) Doris held power to alter legal relations between Plaintiff and landlord by drafting and serving legal documents such as the "permission" letter and the notice to vacate. Doris was also employed to carry out various tasks, such as maintenance, collecting certified mail, enforcement of cleaning (2) Doris was a fiduciary in that she was entrusted to carry out activities such as serving paperwork and other messages on behalf of Landlords and (3) Landlords had some unknown contract or agreement with Dorris allowing her to carry out these tasks, as well as the harassments -HUD Agency § § 12, 13, 14 (Oct. 2020 Update).   Doris and Chen both had full authorization to convey these messages as well as the eviction itself per the written correspondence signed by both Chen and Dorris – 24 C.F.R. § 100.20 Dorris clearly had the authority to impose consequences; and subsequently did via the attempts to block the exit and enforce "quarantines" that were not authorized by any official authority. The power to make these decisions is clearly illustrated by Chen and Lin's reliance on Dorris to enforce these policies and to therefore actively participated in the management of the property.

14. Both landlords Chen and Lin further ratify the statements and threats made by Dorris and other unknown maintenance workers by serving a copy of the letter via

1   email and instructing Dorris to illegally attach physical copies to Plaintiff's door.

2   Chen further ratifies the letter by suggesting that permission could be "cancelled"

3   thereby creating a threatening and intimidating situation under duress and fear of

4   losing "permission" to exit legally. Plaintiff had previously been not allowed to leave

5   get unit by these threats and reached out to domestic violence counselors, the State

6   Circuit court and local police to obtain legal clarification regarding her rights to enter

7   and exit freely.

8

9   15.  Chen and Lin, by serving the and ratifying the statements, effectively participate

10   in the threat to commit unlawful false imprisonment by ratifying the statements and

11   "cancelling permission" to exit. Chen and Lin also reiterate these statements in their

12   own eviction letter dated July 24, 2020, in which they also state that they would

13   "…exercise legal rights", which is an obvious reference to "cancelling permission"

14   to freely enter and exit the unit. Several more complaints were submitted between

15   July 7 and July 23 as well as a copy of the TRO, however Chen declined to adress

16   the health and safety hazard (and therefore hostile housing environment) and

17   allowed Dorris to continue the hostile behavior.  It is unknown whether Dorris was

18   actually a paid employee, however she did benefit by successfully ridding the

19   building of the Plaintiff and may have been given other perks such as rent reduction

20   by landlords as compensation to carry the tasks on behalf of the property. The

1  circumstances viewed in their entirety also constitute disparate under treatment

2  under Title VII as Plaintiff suffered damages and emotional trauma after having to

3  find an emergency living situation during the height of the Pandemic Covid19 based

4  solely on her gender and religion and the refusal to adress safety concerns presented

5  to landlords after the TRO was granted. Plaintiff has suffered damages in the amount

6  to be proven at trial.

7

8  **VI. Prayer for Relief:**

9  16. Wherefore Plaintiff prays for relief as follows:

10      a.  That the Court accept jurisdiction

11      b.  That the Court find in favor of Plaintiff

12      c.  That the Court award compensatory, statutory, and/or exemplary damages in

13         the amounts to be proven at trial

14      d.  The Court grant such additional or alternative and further relief as the Court

15         deems just and equitable

16

17  DATED: Maui, Hawai'i Saturday, January 2, 2021

18  **JASON SCUTT**

19  /s/ Jason Scutt

20  Jason.r.scutt@gmail.com

21

22

23

1

2                      **EXHIBIT A:**

3   Texts showing that complaints were made but ignored by landlord:

4

5

6

7

8

9





11:21

Char
8083838479

C

Ok, when do you move out?

9:40 AM

I don't move into a temporary domestic violence shelter unless I experience further abuse, I prefer not to move, the documents and information are just for your records in case the tenant



sorry to bother you again today

4:23 PM

She told me that she will not answer

1





# Notice To Vacate

7/24/2020

From : Guoqiang Lin & Charlene Chen

To : Jason Scutt

Rental Address: 950 Wailupe drive , upper Wailuku HI 96793

*Please know this is the formal letter to inform you, the tenant   that we will be terminating the lease.  Because the lease is due on 07/31/2019 , and we will not continue to renew the lease. This serves as a 45days notice to vacate the premises. Your moveout should be no later than September 6th,2020.  The security deposit cannot be used as your last month rent. You will still need to pay the rent and electrical bill  as regularly scheduled. Also please provide me a mailing address to regard about the security deposit after you moved. Please know the failure to do so will force us to exercise our legal rights. Should you find out the place sooner than 45 days .We will allow you to exit the lease without fines or penalties.*

*Let me know if you have any questions.*

*Your Landlords,*

1

18

**Jason Scutt** <jason.r.scutt@gmail.com>                                    Thu, Jul 23, 20
To: National Deaf Hotline <nationaldeafhotline@adwas.org>

I Cant physically leave via the only legal exit to my apartment, without "approaching her" or otherwise violating
restraining order, and she has made it clear that I do NOT have her permission at any time to use the commo
enter thereafter, thank you. Also, the other landlord refuses to provide a safe and legal entry and exit to the bu
have been trapped for several days, I need to communicate via text since my ears were injured and I can't full
understand someone shouting at me, thank you , I'm also afraid to get exposed to biohazard covid19 and I'm
trans/lgbtqia, but I do need safe and legal entry and exit, even if they serve an eviction, I dont think the police
understand this message completely, and I'm very sorry to have bothered you, see court doc I filed last night i
but I'm not an attorney , but I dont feel safe also the neighbors who have some unknown affiliation with the lar
blocking the exit have become aggressive and Ive been hearing loud painful ringing tones in both ears, even
right is injured, and I believe some racism or slurs are being used not just by the one below, Thank you
[Quoted text hidden]
--
Jason Scutt

---

**2 attachments**

 **2DRC-20-000933 3rd NOTICE OF VIOLATION.pdf**
10893K

 **2DRC-20-000933 INTERLOC. APPEAL.pdf**
299K

---

**National Deaf Hotline** <nationaldeafhotline@adwas.org>                   Thu, Jul 23, 20
To: Jason Scutt <jason.r.scutt@gmail.com>

I am so sorry to hear about your situation, that is really difficult and complex.

I am wondering what other exit are you allowed to use? Is there only ONE exit which you are not allowed to u
that being said, you have to ask permission every time you leave? That is wrong and violates your equal right
needs.

Can you contact-

https://www.legalaidhawaii.org/contact-us.html

DLIR.HCRC.INFOR@hawaii.gov

os://mail.google.com/mail/u/3?ik=d0b6717e9b&view=pt&search=all&permthid=thread-a%3Ar-3198195996111682026&simpl=msg-

1

**Jason Scutt** <jason.r.scutt@gmail.com>                                    Thu, Jul 23, 2020 at 9:05 A
To: National Deaf Hotline <nationaldeafhotline@adwas.org>

Ok I'll reach out to them -> grateful
[Quoted text hidden]

**National Deaf Hotline** <nationaldeafhotline@adwas.org>          Thu, Jul 23, 2020 at 9:11 A
To: Jason Scutt <jason.r.scutt@gmail.com>

I did some more research, your basic rights being violated you are being prevented to live and survive on basic needs.

You can contact and file complaint to Fair housing act/HUD

dlir.hcrc.info@hawaii.gov
https://www.mauicounty.gov/1606/Fair-Housing

https://www.hud.gov/program_offices/fair_housing_equal_opp/online-complaint

I hope this helps.

Deaf Hotline Advocate
National Deaf Domestic Violence Hotline
Hotline: 855-812-1001
Main Office: (206) 922-7088
www.thedeafhotline.org
www.adwas.org

CONFIDENTIALITY STATEMENT:  This communication, including attachments, may contain confidential or

1       ttps://mail.google.com/mail/u/3?ik=d0b6717e9b&view=pt&search=all&permthid=thread-a%3Ar-3198195996111682026&simpl=msg-a%3Ar-27…

7/23/2020

To whom may concerns,

I, Kelli Dorris hereby to give permission to Jason Scutt to exit the unit, include the common area, Garage and drive way for 45 days, which from 07/24/2020-09/06/2020. This is made by landlord's request. Also, this permission only uses for exit the unit, can't use this for others. If the people Jason Scutt failure to do so, this permission will automatically cancel, also I will exercise my legal rights.

Kelli Dorris

x Kelli Dorris
7/23/20

1

21

## TEMPORARY RESTRAINING ORDER AGAINST HARASSMENT

Based upon the attached Petition for Ex Parte Temporary Restraining Order and Declaration of Petitioner(s) and pursuant to Hawai'i Revised Statutes §604-10.5, the Court finds there is probable cause to believe:

☒ Recent or past acts of harassment by Respondent(s) have occurred.

☒ Threats of harassment by Respondent(s) make it probable that acts of harassment may be imminent against Petitioner(s).

It appears to the Court that a Temporary Restraining Order should be granted and is necessary to prevent acts of harassment. Accordingly, IT IS ORDERED that Respondent(s) shall appear before the Judge in the above-entitled proceeding at the date, time and place indicated in the Notice of Hearing below. Pending the hearing on this Petition, Respondent(s) is/are ordered as follows:

### TO THE RESPONDENT:
### YOU AND ANYONE ACTING ON YOUR BEHALF ARE ORDERED AS FOLLOWS:

☒ Do not contact, threaten, or physically harass Petitioner(s)

☒ Do not telephone Petitioner(s)

☒ Do not enter or visit Petitioner(s)'   ☒ residence, including yard and garage, and   ☒ place of employment.

☐ Pursuant to HAWAI'I REVISED STATUTES §134-7, you shall not possess or control any firearm(s) and/or ammunition for the duration of this Temporary Restraining Order.

☐ You shall immediately turn over for safekeeping all firearms and/or ammunition in your possession and control to the Maui County Police Department *(any District Police Station in Maui County)*, for the duration of this Order or any extensions thereof.

This Order becomes effective upon its signing and filing and shall remain in effect for fifteen (15) days, unless extended or terminated by the Court.

ANY KNOWING OR INTENTIONAL VIOLATION OF THIS TEMPORARY RESTRAINING ORDER AGAINST HARASSMENT IS A MIS-DEMEANOR PUNISHABLE BY A JAIL SENTENCE OF UP TO ONE YEAR AND/OR UP TO A $2,000 FINE. A SENTENCE OF 48 HOURS JAIL FOR A SECOND CONVICTION AND 30 DAYS JAIL FOR ANY SUBSEQUENT CONVICTION(S) IS MANDATORY. [HAWAI'I RE-VISED STATUTES §604-10.5, §706-663 AND §706-640].

Date: JUL 1 2020     Judge of the above-entitled Court Kirstin Hamman

### NOTICE OF HEARING

TO: _ Kalli  Dorris _

NOTICE IS GIVEN that the Petitioner(s) above named has/have filed the foregoing Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment.

YOU ARE COMMANDED to appear before the Presiding Judge of the above-entitled Court, the District Court of the above Circuit, at ___ Wailuku District Court, Hoapili Hale, 2145 Main Street, Third Floor, Wailuku, HI   Courtroom 3D on ___ MONDAY ___ JUL 1 3 2020 ___ , 20 ___ at 8:30 o'clock A .M.

Prior to the scheduled hearing date, you or your attorney may file a written response explaining, excusing, justifying, or denying the alleged act or acts of harassment. At the hearing, the parties shall be prepared to testify, call and examine witnesses, present any documents, and give legal or factual reasons why the Injunction should or should not be granted. Each party may be represented by an attorney and shall be prepared to proceed at the hearing. IF YOU OR YOUR ATTORNEY FAIL TO ATTEND AT THE TIME AND PLACE DESIGNATED, AN ORDER GRANTING PETITION FOR INJUNCTION AGAINST HARASSMENT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE PETITION.

The Court shall receive all evidence that is relevant at the hearing, and may make independent inquiry. If the Court finds by clear and convincing evidence that harassment by Respondent(s) in the form of physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury to Petitioner exists, it may enjoin for no more than three years further harassment by Respondent(s). If the court finds by clear and convincing evidence that harassment by Respondent(s) in the form of an intentional or knowing course of conduct directed at Petitioner(s) that seriously alarms or disturbs, consistently or continually bothers Petitioner(s) and that serves no legitimate purpose exists, and such course of conduct would cause a reasonable person to suffer emotional distress, the court shall enjoin for no more than three years, further harassment by Respondent(s).

This Order shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the public, unless a judge of the above-entitled Court permits, in writing on this Order, personal delivery during those hours.

Date: JUL 1 1 2020     Clerk of the above-entitled Court

In accordance with the Americans with Disabilities Act if you require an accommodation for your disability, please contact the ADA Coordinator at PHONE NO. 244-2800, FAX 244-2849, or TTY 244-2889 at least ten (10) working days in advance of your hearing or appointment date. For Civil related matters, please call 244-2706 or visit the Service Center at 2145 Main Street, Room 141, Wailuku, Hawai'i 96793.

Reprographics (10/11)     Page 3 of 3     TRO 2G-P-2B5

1

# HOUSING DISCRIMINATION INFORMATION

Departamento de Vivienda y Desarrollo Urbano    Oficina de Derecho Equitativo a la Vivienda
U.S. Department of Housing and Urban Development   Office of Fair Housing and Equal Opportunity

**Instructions:** (Please type or print)  Read this form carefully. Try to answer all questions. If you do not know the answer or a question does not apply to you, leave the space blank. You have one year from the date of the alleged discrimination to file a complaint. Your form should be signed and dated.

JASON SCUTT
Your Name

950 WAILUPE DR
Your Address

| City | State | Zip Code |
|------|-------|----------|
| WAILUKU | HI | 96793 |
| Best time to call | Your Daytime Phone No | Evening Phone No |

## Who else can we call if we cannot reach you?

| WENDY B | 7755448151 |
|---------|------------|
| Contact's Name | Best Time to call |
| | |
| Daytime Phone No | Evening Phone No |
| | |
| Contact's Name | Best Time to call |
| | |
| Daytime Phone No | Evening Phone No |

## What happened to you?

How were you discriminated against?

For example: were you refused an opportunity to rent or buy housing? Denied a loan? Told that housing was not available when in fact it was? Treated differently from others seeking housing?

State briefly what happened.

I not allowed to use the common area, which includes the only legal exit from my dwelling upstairs, The violent party, landlord and nieghbors/other tenants have taped packages to the outside of my door and have sent a cryptic "notice to vacate" via text message, but they also include the fact that they will "exercise their legal rights" if I dont comply - this to me is clearly not permission to leave despite the fact that my luggage is packed, but I have no place to go - I also am refused access to the mailbox and garbage, which were original terms of the lease, see the two pages sent to me by them attached (and possibly also attached to my front door) and please understand that Im transgender and have a disability so please email or text me only, and Im running low on food. This may be related to a different civil complaint to a differnt agency and in court.

Form HUD-903.1 (1/02)                OMB Approval No. 2529-0011 (exp. 1/31/2011)

1

1

| UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAI'I | |
|---|---|
| JASON SCUTT, an individual, on behalf of herself<br><br>Plaintiff<br><br>vs.<br><br>Doris, Lin, Chen<br><br>Defendant. | CASE NO.: CV 20-00333 JMS -WRP<br><br><br>CERTIFICATE OF SERVICE |

2

### CERTIFICATE OF SERVICE

I certify, on the date below, a copy of the foregoing document was duly

served upon the following party as indicated below:

3

4

5    E FILE

6

7

8    DATED: Maui, Hawai'i Saturday, January 2, 2021

9    /s/ JASON SCUTT

10   281 Kaikea St.
11   Kihei, HI, 96753
12   *Pro Se Plaintiff*
13

24