IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JASON SCUTT,<br><br>                Plaintiff,<br><br>    vs.<br><br><br>KELLI DORRIS; XIAYIN (GAOQUIANG) LIN; and CHARLENE CHEN,<br><br>                Defendants. | CIV. NO. 20-00333 JMS-WRP<br><br>ORDER DISMISSING IN PART AND ALLOWING TO PROCEED IN PART THE SECOND AMENDED COMPLAINT, ECF NO. 11. |

## ORDER DISMISSING IN PART AND ALLOWING TO PROCEED IN PART THE SECOND AMENDED COMPLAINT, ECF NO. 11.

## I. INTRODUCTION

On January 2, 2021, pro se Plaintiff Jason Scutt ("Plaintiff") filed a Second Amended Complaint ("SAC") against her former landlords, Xiayin (Gaoquiang) Lin ("Lin") and Charlene Chen ("Chen") (collectively, "Landlords"), and a former co-tenant, Kelli Dorris ("Dorris") (collectively, "Defendants"). ECF No. 11. Plaintiff alleges that Dorris, acting as an agent of Lin and Chen, discriminated against her on the basis of her sex and religion in violation the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 et seq. *Id.* She further alleges that Lin and Chen violated the FHA by failing to take action to prevent a hostile housing

environment created by Dorris in violation of 42 U.S.C. § 3617. *See id.* at PageID ## 159-60. For the reasons set forth below, the claim against Dorris is DISMISSED without leave to amend, but the claims against Lin and Chen may proceed.

## II. <u>BACKGROUND</u>

### A. **Procedural Background**

On July 27, 2020, Plaintiff filed her original Complaint alleging an FHA claim against Defendants based on her status as a "transgender/LGBTQ IA+" and "disabled person." ECF No. 1. Plaintiff sought relief in the form of an injunction preventing Defendants from evicting her and damages of at least $100,000. *Id.* at PageID ## 6-7. On the same day, Plaintiff filed an application to proceed in forma pauperis, ECF No. 3.

On September 10, 2020, this court granted Plaintiff's application to proceed in form pauperis and dismissed the Complaint for failure to state a claim, ECF No. 7 (the "September 10 Order"). The September 10 Order explained that Plaintiff had failed to "allege facts beyond the mere accusation of discrimination" that show "a causal relationship between any specific Defendant's conduct and Plaintiff's status as a transgender/LGBTQIA+ and/or disabled person." *Id.* at PageID # 74. Because it was unclear on the face of the Complaint whether Dorris was Plaintiff's landlord or another tenant, the Order also noted that Dorris, if in

2

fact another tenant, may not be liable under the FHA.  *Id.* at PageID # 75 n.4.
Finally, the September 10 Order dismissed Plaintiff's claim for injunctive relief
because Plaintiff had already moved out of the apartment.  *Id.* at PageID ## 75-76.
Plaintiff was granted leave to amend the Complaint to include, if possible, "factual
allegations sufficient to state a plausible FHA discrimination claim for damages."
*Id.* at PageID #76.

On October 2, 2020, Plaintiff filed a six-page First Amended
Complaint ("FAC"), as well as a 44-page exhibit, which the court construed as part
of the FAC.  ECF Nos. 8, 8-1; ECF No. 10 at Page ID # 135.  Plaintiff abandoned
her argument that she was discriminated against due to her status as a "disabled
person," instead arguing that each of the Defendants discriminated against her
"based on [their] objections to her LGBT status . . .  and religious beliefs."  ECF
No. 8 at PageID # 85.  The FAC also clarified that Dorris was a tenant, not a
landlord, but alleged that Dorris was liable under the FHA because she was "acting
as [an] agent and on behalf of the building's owner."  *Id.* at PageID # 83.
Specifically, Plaintiff alleged that Lin and Chen employed Dorris to attach a notice
to vacate to Plaintiff's front door, enforce cleanliness in the apartment building's
common area, serve and sign for mail addressed to the owner and other tenants,
and make complaints to other tenants regarding noise and the cleanliness of their
window screens.  *Id.*

3

On December 14, 2020, the court dismissed Plaintiff's FAC for failure to state a claim, ECF No. 10 (the "December 14 Order"). In a detailed analysis, the court found that Plaintiff had failed to state a direct FHA claim against Lin and Chen because "the FAC alleges no facts suggesting that Lin and Chen [engaged in any discriminatory conduct] '*because of*' Plaintiff's religion or transgender/LGBT status." ECF No. 10 at PageID ##143-44. In addition, the court found that the "FAC fails to allege facts showing that Lin and Chen are vicariously liable for Dorris' conduct and/or that Dorris is herself subject to liability under the FHA" as an agent of Lin and Chen. *Id.* at PageID #142. In particular, the court found that the FAC failed to allege facts plausibly demonstrating that Dorris acted as an agent of the Landlords, as Plaintiff did not allege that Dorris had the power to alter legal relationships, impose or enforce sanctions, or otherwise exercise any decision-making authority on behalf of the Landlords related to the building or Plaintiff's right to live there. ECF No. 10 at PageID # 148.

Nevertheless, because the court could not "say it would be impossible for Plaintiff to allege facts to support her claims," Plaintiff was granted "a final opportunity to state a claim." *Id.* at PageID # 149. As to each Defendant, Plaintiff was instructed to "(1) allege the basis of this court's jurisdiction, (2) state each claim she is making—that is, which FHA provision(s) she alleges a defendant violated, (3) name the defendant against whom she asserts a claim, (4) allege

4

exactly what that defendant did or did not do, (5) allege what specific injury she suffered because of that defendant's conduct, and (6) state what specific relief she seeks." *Id.* at PageID # 150. The court further explained that an amended complaint may not incorporate by reference any part of the prior Complaints, and that any cause of action not raised in the SAC is waived. *Id*. at PageID #151.

**B.    The SAC**

Plaintiff filed her SAC on January 2, 2021,  ECF No. 11. The SAC alleges only two theories of liability. First, the SAC realleges that Dorris—acting as an agent of the Landlords—violated the FHA by harassing Plaintiff based on her "status as Transgender/LGBTQ IA+ as well as her adherence to Jewish religious beliefs." *Id.* at PageID # 153. Second, the SAC alleges that the Landlords violated the FHA by failing to prevent the hostile housing environment created by Dorris. *Id.* at PageID ## 159-60.

## III.  LEGAL STANDARD

The court must subject each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and order the dismissal of any complaint that is "frivolous or malicious; . . . fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires"

5

the court to dismiss sua sponte an in forma pauperis complaint that fails to state a claim); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners").

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering whether a complaint fails to state a claim, the court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and determine whether these allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

A district court may dismiss a complaint for failure to comply with Rule 8 when the complaint fails to provide the defendant fair notice of the wrongs allegedly committed. *See McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough

detail to guide discovery"). Rule 8 requires more than "the-defendant-unlawfully-harmed-me accusation[s]" and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citations and internal quotation signals omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citations, internal quotation signals, and alterations omitted)

Plaintiff is appearing pro se; consequently, the court liberally construes the Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (citations and internal quotation signals omitted); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977-78 (9th Cir. 2013).

## IV.  <u>DISCUSSION</u>

The FHA is a "broad remedial statute" that courts "generously construe." *City of Edmonds v. Wash. St. Bldg. Code Council*, 18 F.3d 802, 804 (9th Cir. 1994). Among other things, the FHA makes it unlawful for property

owners and landlords to: (1) refuse to rent or otherwise deny "a dwelling to any person because of . . . religion [or] sex," 42 U.S.C. § 3604(a); and (2) "discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . religion [or] sex," *id.* § 3604(b).  Further, the FHA makes it unlawful to "coerce, intimidate, threaten, or interfere with [a tenant's] exercise or enjoyment of . . . any right granted or protected by . . . [§] 3604," *id.* § 3617.

Regulations interpreting the FHA, promulgated by the Secretary of Housing and Urban Development ("HUD"), provide that "[e]victing tenants" and "[s]ubjecting a [tenant] to harassment . . . that causes the person to vacate a dwelling" "because of [the tenant's] . . . religion [or] sex" are prohibited actions under § 3604(a).  24 C.F.R. § 100.60(b).  HUD regulations further provide that actions prohibited by § 3604(b) include, but are not limited to, "[l]imiting the use of privileges, services or facilities associated with a dwelling" and "[s]ubjecting a [tenant] to harassment . . . that has the effect of . . . denying or limiting services or facilities in connection with the . . . rental of a dwelling" "because of . . . religion [or] sex."  *Id.* at § 100.65(b).

Plaintiff alleges that Dorris violated § 3604 by directly harassing her due to her transgender status and Jewish religion.  ECF No. 11.  And Plaintiff alleges that Lin and Chen violated § 3617 by allowing Dorris to harass Plaintiff,

8

resulting in a hostile housing environment.  *See id.* at PageID ## 159-60.  The court considers each allegation in turn.

## A.    Dorris

The SAC has failed to correct the FAC's deficiencies and Plaintiff has again failed to state a claim against Dorris under the FHA.  That is, Plaintiff again fails to allege facts showing that Dorris qualifies as an individual subject to liability under the FHA.  At all times relevant, Dorris was a co-tenant at Plaintiff's apartment building.  But as the court explained in the December 14 Order, "tenants who do not own the subject property are not liable under the FHA."  ECF No. 10 at PageID #148 (citing *Hoostein v. Mental Health Ass'n (MHA), Inc.*, 98 F. Supp. 3d 293, 298 (D. Mass. 2015)).  As with the FAC, Plaintiff attempts to argue that Dorris may be held liable because she was "acting as [an] agent" of the Landlords. ECF No. 11 at PageID #155.  And while it is true that agents or employees of a property owner may be liable for their own unlawful conduct under the FHA, *see, e.g.*, *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562 (5th Cir. 1979); *Hintz v. Chase*, 2017 WL 3421979, at *3 (N.D. Cal. Aug 9, 2017), Plaintiff has again failed to allege facts plausibly demonstrating an agency relationship between the Landlords and Dorris.

Whether an agency relationship exists for purposes of the FHA is determined under federal law, which looks to traditional agency principles and

HUD regulations.  *See, e.g.*, *Holley v. Crank*, 400 F.3d 667, 673 (9th Cir. 2005); *Harris v. Itzhaki*, 183 F.3d 1043, 1054 (9th Cir. 1999).  The question of agency is for the jury to determine.  *Harris*, 183 F.3d at 1054 (citation omitted).  Thus, at this screening stage, the court determines only whether the FAC alleges facts from which a jury could find the existence of an agency relationship.  *See Dantzler v. Harrison*, 2018 WL 3198453, at *4 (C.D. Cal. June 25, 2018) (citations omitted).

The essential characteristics of an agency relationship include: (1) "[a]n agent . . . holds a power to alter the legal relations between the principal and third persons"; (2) "[a]n agent is a fiduciary with respect to matters within the scope of [her] agency"; and (3) "[a] principal has the right to control the conduct of the agent with respect to matters entrusted to [her]."  Restatement (Second) of Agency §§ 12, 13, 14 (Oct. 2020 Update).  And HUD regulations define an agent for purposes of the FHA as "any person authorized to perform an action on behalf of another person regarding any matter related to the . . . rental of dwellings, including offers, solicitations or contracts and the administration of matters regarding such offers, solicitations or contracts or any residential real estate-related transactions."  24 C.F.R. § 100.20.  Factual allegations have been found sufficient to support an agency relationship where it was alleged, for example, that a tenant "collect[ed] rent checks and show[ed] vacant units to prospective tenants[,]" *Harris*, 183 F.3d at 1054; and where a tenant was granted authority by the owner to

10

change the locks, thereby altering a co-tenant's entry rights, *see Dantzler*, 2018 WL 3198453, at *4.

In the SAC, Plaintiff makes the same insufficient factual allegations of an agency relationship as in the FAC. She alleges that the Landlords employed Dorris to: (1) attach a notice to vacate to Plaintiff's front door; (2) enforce cleanliness in the common area; (3) serve and sign for mail addressed to the owner and other tenants; and (4) make complaints to other tenants regarding noise and cleanliness. ECF No. 11 at PageID ##161-62. Plaintiff attempts to tie these facts to the standard for an agency relationship by stating that, by virtue of carrying out these tasks, Dorris "held [the] power to alter legal relations"; that "Dorris was a fiduciary"; and that "Dorris clearly had the authority to impose consequences." *Id.* at PageID #161. But, without more, the court cannot accept these conclusory allegations as true. *See Iqbal*, 556 U.S. at 677-80.

Further, as in the FAC, the SAC alleges no facts as to the relationship between the Landlords and Dorris "other than the fact that [Dorris] is also a tenant on the premises." *White v. Peek*, 2019 WL 265145, at *3 (S.D. Cal. Jan. 18, 2019). The SAC speculates that the employment relationship was formalized in an "unknown contract or agreement" and that Dorris "may have been given . . . perks such as rent reduction by landlords as compensation to carry [out] the tasks on behalf of the property." ECF No. 11 at PageID ##161-62. But this unfounded

11

speculation does not permit a plausible finding that Dorris was an employee or agent of Lin and Chen.  This is Plaintiff's third attempt to state a claim against Dorris.  Because further amendment appears to be futile, the claim against Dorris is DISMISSED without leave to amend.  *See Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) ("[L]eave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay.") (citations and internal quotation signals omitted).

**B.**     **Chen and Lin**

        In the SAC, Plaintiff alleges a single theory of liability against Chen and Lin: that they facilitated Dorris' creation of a hostile housing environment in violation of the FHA.[1]  Section 3617 makes it unlawful to "coerce, intimidate, threaten, or interfere with [a tenant's] exercise or enjoyment of . . . any right granted or protected by" the FHA, including the right to be free from discrimination on the basis of sex or religion.

        The Ninth Circuit has not addressed whether a claim for hostile housing environment against a landlord or property owner based on the discriminatory conduct of one tenant against another tenant is actionable under

_____

[1] More precisely, Plaintiff alleges that Chen directly permitted the hostile housing environment while Lin, "who appears to be the property owner[,]" ECF No. 11 at PageID #160, is vicariously liable for the conduct of Chen.  *Id.*; *see* 24 C.F.R. § 100.7(b) (recognizing vicarious liability in FHA claims); *Meyer*, 537 U.S. at 285-86 (discussing the "well established" principle that the FHA "provides for vicarious liability").

§ 3617.  But other courts have recognized such a claim.  *See, e.g.*, *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 379 (2d Cir. 2019); *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364-65 (8th Cir. 2003); *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996); *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993); *Hicks v. Makaha Valley Plantation Homeowners Ass'n*, 2015 WL 4041531, at *11-12 (D. Haw. June 30, 2015); *cf. Baker v. Waterford Square Homeowners Ass'n*, 57 F. App'x 211 (5th Cir. 2003) (assuming without deciding that the FHA provides relief for hostile housing environment claims).  The court assumes for screening purposes that the FHA provides a claim for hostile housing environment.

To state a hostile housing environment claim based on sex or religious discrimination, Plaintiff must show that: "(1) she was subject to unwelcome harassment based on her [sex or religion]; (2) the harassment was sufficiently severe or pervasive to deprive her of her right to enjoy her home; and (3) the management company or condominium association knew or should have known of the harassment in question and failed to take prompt remedial action."  *Hicks*, 2015 WL 4041531, at *11.

Plaintiff has plausibly pled each element of a hostile housing environment claim.  First, Plaintiff has adequately alleged that Dorris harassed her because of her transgender status and religion.  Plaintiff alleges that Dorris began harassing her "shortly after discovering Plaintiff washing female clothing in the

13

common area washroom and otherwise exhibiting features that are not normally associated with the male stereotype" and became "visibly upset" as a result.  ECF No. 11 at PageID #154.  This timing plausibly suggests that Dorris harassed Plaintiff because of her transgender status.  *See Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997) (explaining that courts apply Title VII discrimination analysis in assessing FHA discrimination claims); *Budnick v. Town of Carefree*, 518 F.3d 1109, 1114 (9th Cir. 2008).  Plaintiff also alleges that Dorris called her a "[k]ike" and said "[m]azel tov" to her after Plaintiff had been listening to Hanukkah music.  *Id.* at PageID # 156.  While use of the phrase "mazel tov," alone and in this context, may not be enough to state a plausible discrimination claim, the use of a religious slur is sufficient.  *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004); *Mack v. Town of Pinetop Lakeside*, 780 F. App'x 448, 450-51 (9th Cir. 2019).

Second, Plaintiff has alleged harassment that was "sufficiently severe or pervasive to deprive her of her right to enjoy her home."  She alleges that "throughout most of 2020," Dorris regularly made "frivolous" complaints about her to the landlords that "had no factual basis."  ECF No. 11 at PageID ## 154-55, 159.  And she alleges that Dorris "prevented Plaintiff from leaving her unit via the common area" by "approaching without face coverings" during the COVID-19 pandemic.  *Id.* at PageID # 157.  Further, after Plaintiff was granted a state court

14

temporary restraining order ("TRO") against Dorris in July 2020, she alleges that "Dorris began positioning herself between the only legal exit and her vehicle thereby preventing Plaintiff [from] legally exit[ing] her unit for several days in order to try to force Plaintiff to walk within 10 feet of her thereby violating the terms Plaintiff's own TRO."[2]  *Id.*  According to Plaintiff, this behavior impeded her from leaving her unit to get food, and effectively barred her from using facilities in the common area, including laundry units.  *Id.* at PageID ## 159, 175. These allegations that Dorris' harassment altered Plaintiff's housing conditions by preventing her from leaving her apartment to acquire basic necessities and to access common resources are sufficient, at this screening stage, to plausibly demonstrate "offensive behavior [that] unreasonably interferes with use and enjoyment of the premises."  *Honce*, 1 F.3d at 1090 (recognizing hostile housing environment claim where harassment is severe or pervasive enough to "alter the conditions of the housing arrangement").

Finally, Plaintiff has plausibly demonstrated that Chen and Lin knew of Dorris' harassment and failed to take prompt remedial action.  Plaintiff alleges that Chen "ignored multiple written complaints about the discriminatory conduct

---

[2] It is not clear that Plaintiff would have violated the terms of the TRO by coming within 10 feet of Dorris.  *See* ECF No. 11 at PageID # 174.  Regardless, Plaintiff believed that she would violate the TRO by approaching Dorris and Dorris constrained Plaintiff's movement on the basis of that belief.

and hostile housing environment carried out by Dorris."  ECF No. 11 at PageID # 159; *see also id.* at PageID # 166 (text message from a landlord responding to Plaintiff's complaint stating: "[s]orry there is nothing I can do for you").  Plaintiff additionally alleges that "Landlords took no action to correct the hazard," but instead "aided" Dorris by requiring Plaintiff to receive permission from Dorris to leave her own apartment.  *Id.* at PageID ## 157-58.  And, Plaintiff alleges that the Landlords served her with a notice to vacate (placed on Plaintiff's door by Dorris) rather than attempting to address the harassment.  *Id.* at PageID # 158.

These allegations are sufficient to demonstrate that the Landlords knew of the discriminatory action but failed to take remedial action.  *See Hicks*, 2015 WL 4041531, at *12 (finding an actionable claim for hostile housing environment where the defendant property owners knew of a co-tenant's harassing conduct but failed to "assist [the plaintiffs] or take any remedial action."); *cf. Neudecker*, 351 F.3d at 363-64 (finding an actionable claim under § 3617 where property owner responded to complaints of harassment with a threat of eviction).

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the claim against Dorris is dismissed without leave to amend.  But the claims against Chen and Lin may proceed on a hostile housing environment theory.  The Complaint shall be served on Chen and Lin as directed below, who are required to file a response after service is effected.

16

## VI.  <u>SERVICE OF PROCESS</u>

As stated above, Plaintiff's claim of a hostile housing environment may proceed against Chen and Lin.

Accordingly, it is ORDERED THAT:

1.      The Clerk of Court is directed to send Plaintiff two (2) summonses, two (2) USM-285 forms, two (2) Notice of Lawsuit and Request for Waiver of Service of Summons forms (AO 398), two (2) Waiver of Service of Summons forms (AO 399), and a copy of the endorsed Second Amended Complaint. Plaintiff shall then complete the forms as directed, and submit the following documents to the United States Marshals Service in Honolulu, Hawaii, for service on each remaining Defendant (i.e., Chen and Lin): a completed USM-285 form, a copy of the endorsed Second Amended Complaint, and a summons as to each Defendant.  A set of forms is needed for each Defendant.

2.      Upon receipt of these documents and a copy of this Order, the United States Marshal shall serve on each Defendant a copy of the Second Amended Complaint, completed Notice of Lawsuit and Request for Waiver of Service form (AO 398) and completed Waiver of Service of Summons form (AO 399), as directed by Plaintiffs pursuant to Rule 4 of the Federal Rules of Civil Procedure without payment of costs.

3.      The United States Marshal is directed to retain the sealed summons and a copy of the Second Amended Complaint for future use.  The United States Marshal shall file a returned Waiver of Service of Summons form as well as any request for waiver that are returned as undeliverable, as soon as they are received.

4.      If a Waiver of Service of Summons form is not returned by any Defendant within sixty days from the date the United States Marshal mailed the request for waiver, the United States Marshal shall:

a. Personally serve such Defendant with the above-described documents pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

b. Within ten days after personal service is effected, the United States Marshal shall file the return of service for such Defendant, along with evidence of any attempts to secure a waiver of service of summons and of the costs subsequently incurred in effecting service on Defendant.  The costs shall be enumerated on the USM-285 forms and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and Second Amended Complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served Defendant in

accordance with the provisions in Federal Rule of Civil Procedure 4(d)(2).

5.     Plaintiff shall serve a copy of all further pleadings or documents submitted to the court upon Defendants or their attorneys.  Plaintiff shall include, with any original paper to be filed with the Clerk of Court, a certificate stating the date that an exact copy of the document was mailed to Defendants or their counsel. Any paper received by a District Court Judge or Magistrate Judge that has not been filed with the Clerk of Court or which does not include a certificate of service will be disregarded.

6.     Plaintiff is notified that, until service of the Second Amended Complaint has been effected, Plaintiff should not file motions or other documents with the court.  Plaintiff is further notified that she must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 20, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Scutt v. Dorris, et al.*, Civ. No. 20-00333 JMS-WRP, Order Dismissing in Part and Allowing to Proceed in Part the Second Amended Complaint, ECF No. 11.